

# FINAL ARBITRATION AWARD

## *Vivek Shah v. Citibank, N.A.*

Case Number: 01-23-0001-6380

I, Kathleen Smalley, the undersigned Arbitrator, having been designated in accordance with the arbitration agreements between the above-named parties and in accordance with the minute order of the United States District Court for the Northern District of Illinois – Eastern Division in Case No. 1:22-ev-02437; having been duly sworn; and having duly heard the proofs and allegations of the Claimant proceeding *pro se* and the Respondent, who was represented by counsel, at an evidentiary hearing held on October 12, 2023; and having reviewed the arguments briefed by the parties, hereby issue this AWARD as follows:

## A. RELEVANT PROCEDURAL HISTORY

This case has had an unusual history for a consumer case, which is tracked in numerous scheduling, protective, discovery, pre-hearing, and post-hearing orders (the "Procedural Orders"). The procedural history is not repeated here except to the extent not previously reported in the Procedural Orders.

In the days immediately preceding the Evidentiary Hearing and at the Evidentiary Hearing, the Arbitrator decided the following:

1. <u>Discovery</u>. In the prehearing conference of Friday, October 6, 2023 (the "Conference"), the Arbitrator made decisions on discovery based on a representation by Respondent's counsel as to national security constraints on disclosure. The Arbitrator then directed Respondent to provide, as part of the Saturday, October 7, 2023 exchange of information, a judicial opinion supporting the representation, accompanied by any subsequent negative citation history. The written order that followed the prehearing conference (Prehearing Order No. 2) confirmed this direction.

    Respondent did not provide the required judicial opinion to Claimant or to the Case Manager until the evening before the Evidentiary Hearing, which resulted in a failure to deliver the opinion to the Arbitrator until a few minutes before the Evidentiary Hearing.

    During a break at the Evidentiary Hearing, the Arbitrator read the case submitted by Respondent. The Arbitrator gave Claimant an opportunity to submit a case, which

Claimant chose from among the citations in the negative history submitted by Respondent with its case, and the Arbitrator read Claimant's case during the break.

Based on the two cases submitted, the Arbitrator concluded that there was an apparent split in authority on the point.[1] However, the Arbitrator concluded that it was unnecessary to determine which line of authority would apply in this case. The requested discovery of the broad policies that Respondent uses in evaluating all new accountholders would be intrusive and burdensome, would not add to the information already available covering the decisions about Claimant's account, and was unlikely to lead to any relevant evidence on the theories that Claimant has included in the lengthy complaint incorporated in his demand. Therefore, under Rule 22(c), the Arbitrator concluded that this information exchange is not needed to provide for a fundamentally fair process and declined to order Respondent to produce the requested documents. Respondent failed to timely comply with Prehearing Order No. 2, but the late delivery of the cases did not result in harm to Claimant.

2. Evidence. Claimant introduced a number of exhibits at the Evidentiary Hearing. (C-1 – C-14 and C-17 – C-22). Respondent's Counsel raised objections to Exhibits C-11 – C-14 and C-17 – C-22, including lack of foundation, hearsay, and relevance. Having heard and considered the objections, the Arbitrator admitted all exhibits and has considered the objections in determining the weight that should be accorded to the evidence.

3. Amendment of demand. Claimant alleged various theories related to use by Respondent of information prepared by Dow Jones. At the Evidentiary Hearing, Claimant requested permission to amend his demand to state those theories as to use of information prepared by Thompson-Reuters and seek further discovery related to Thompson-Reuters. The request was denied as untimely. Claimant withdrew claims related to alleged misuse of information prepared by Dow Jones. These claims, stated in Paragraphs 94(f) – 94(j) of Claimant's Complaint,[2] are accordingly denied.

4. Directions with respect to account bonus. As will be discussed further below, the "minimum" damages (see Claimant's Demand) sought by Claimant consist of a $1500 bonus payable under the Account Agreement. Respondent did not address this claim specifically during the Evidentiary Hearing, and the Arbitrator directed that the post-hearing brief clarify Respondent's position on this issue.

---

[1] All courts agree that documents that would reveal the existence of a Suspicious Activity Report (not at issue here) are protected from disclosure, while underlying account transactions and statements are discoverable. In between, some courts give broad protection to documents describing how the bank conducts internal monitoring and investigations to detect fraud and money laundering, *E.g., Norton v. US Bank*, N.A. 179 Wash. App. 450 (2014). Others provide much more limited protection and conclude that documents reflecting the investigative process to protect against fraud and money-laundering are not protected. *E.g., Wulz v. Bank of China Ltd.*, 56 F. Supp. 3d 598 (2014). The exact lines are not clear from this sample of cases.

[2] Claimant filed a Complaint in the United States District Court for the Northern District of Illinois (1:22-cv-02437), which was incorporated in the Demand in this case.

2

5. <u>Chase minute order</u>. The parties have referred to a minute order (the "Chase Order") in litigation between Claimant and Chase Bank as potentially relevant to this case. Neither party has filed or produced a copy, and the Arbitrator has not considered any litigation between Claimant and any other party besides Respondent in making the determinations reflected here. Arguments based on the Chase Order are stricken.

6. <u>Post-hearing submissions</u>. The parties agreed on a schedule for post-hearing briefs. Respondent filed a post-hearing brief in support of its case in chief to supplement the arguments presented in pleadings and hearings; Claimant waived its post-hearing brief and relied on arguments already presented in pleadings and hearings. Claimant filed an opposition responding to Respondent's brief. There were no further objections to the briefs or further briefs.

7. <u>Closing the hearing</u>. After the submission of the briefs described above, the Respondent stated that it had no further proofs to offer or witnesses to be heard, and Claimant requested further hearing and discovery based on objections raised during the course of the proceedings. The request was denied in an order dated December 22, 2023, and the hearing was closed on December 22, 2023.

B. UNDISPUTED FACTS

The following facts are not disputed.

Claimant is a convicted felon who has served his approximately 7-year sentence and been released. By January 24, 2021, he applied for and received a credit card with Respondent Citibank (the "Credit Card") (Ex. R-1). On or about January 18, 2022, Claimant opened a Citigold Checking Account (the "Bank Account") with Citibank. (Ex. R-13.) As part of a promotional offering, the Bank Account was subject to an agreement (the "Account Agreement") that provided, in relevant part:

- If the account owner, Claimant, deposited $200,000 that remained in the account for 60 days and maintained the account in good standing until the payment of the bonus, Claimant would receive, within 90 days thereafter, a bonus of $1500 (the "Bonus") deposited in the account. (Ex. C-10 at SHAH033-035).[3]

- Respondent had the right to terminate the account at any time for any reason or for no reason. (Ex. R-6 at CITI000085).

Claimant deposited $200,000 on January 27, 2022. (Ex. R-13 at CITI000349.)

On March 16, 2022, Respondent sent a letter closing the Bank Account, effective April 15, 2022, but with certain privileges to be cancelled by April 10, 2022. (Ex. R-8). Respondent

---

[3] Although the index sheet for Mr. Shah's exhibits labels this exhibit as C-10, there are no separate documents for the exhibits and they are not consecutively paginated. The numbers at the top of the relevant pages are SHAH033-035.

3

returned the funds deposited by Claimant and did not pay the Bonus. (Ex. R-13.) The balance in the Bank Account exceeded $200,000 from the date of the deposit until April 8, 2022. (Ex. R-13.)

Thereafter, on April 17, 2022, Respondent cancelled the Credit Card, effective immediately. (Ex. R-3). On April 27, 2022, Claimant requested in writing the reason for the closure. (Ex. R-4). Respondent responded by letter dated May 2, 2022 as follows:

> As a result of a previous review of your Citi banking account, it was determined that your Citi banking relationship would be terminated. In accordance with the decision to no longer do business with you, the above-referenced account were [sic] closed as of April 17, 2022.

(Ex. R-5).

## C. FINDINGS ON DISPUTED FACTS

The most serious factual dispute was the nature of the analysis underlying Citibank's decision to close the Bank Account. At the Evidentiary Hearing, credible testimony from employees of Respondent established that there was no categorical policy denying banking services to former felons. After the testimony, Claimant conceded that Citibank does not categorically bar felons. The same evidence established that Respondent's employees had undertaken a careful review of publicly available information that presented legitimate concerns about the possibility of misuse of banking services and the prospect of reputational issues arising for Respondent if it continued to provided banking services to Claimant.

The evidence further established that Claimant had no opportunity to challenge the evidence that led to Respondent's conclusion. In some instances, the information upon which Respondent relied may not have been entirely accurate, but there is no evidence that Respondent is responsible for any inaccuracies; they were simply a product of relying on press and information that is publicly available. Nor is there any evidence that Respondent would have made a different decision if any inaccuracies had been corrected.

## ANALYSIS

Claimant has claimed a right to the Bonus and has claimed that Respondent's conduct with respect to the Credit Card and the Bank Account violated both state[4] and federal law. Claimant's theories are each addressed below.

1. <u>Discrimination against convicted felons</u>. The Claimant asserted that Respondent had wrongfully closed the Bank Account because Claimant was a convicted felon and argued in the Complaint that a categorical denial of banking services was unfair and a violation of law. Complaint, Paragraph 94(a). The evidence established that

---

[4] Although they stipulated at the preliminary case management hearing that the Arbitration would be governed by South Dakota law, both parties have argued, without objection, under Illinois law. The Arbitrator treats these arguments as a stipulation that Illinois law governs the issues here.

4

    Respondent does not categorically deny banking services to convicted felons. Claimant did not establish that such a categorical policy would violate any law and orally withdrew such claims (TX. 327:24 – 328:8). Claimant is entitled to no relief on this claim, and it is denied.

2. <u>Lack of opportunity to challenge evidence underlying closure</u>. Claimant argues that the policy under which Respondent is "investigator…judges…jury [and] …executioner" (TX 328:15-18) is unfair. However, the Account Agreement permits Respondent to close the Bank Account for any reason or no reason. Claimant has not provided a legal theory that would require Respondent to do business with, or continue to do business with, anyone, as long as it does not discriminate on prohibited grounds such as race. Consequently, these claims, stated in Paragraphs 94(a) and 94(b) of the Complaint, are denied.

3. <u>ECOA</u>. Claimant argues that Respondent did not comply with the Equal Credit Opportunity Act ("ECOA"), asserting that, as an "applicant" for credit, he was entitled to an explanation of the specific reason for the denial of credit and that the letter quoted above did not comply. Respondent disagrees, on three points:

   a. <u>Is Claimant an "applicant"?</u> Respondent argues that Claimant is not an "applicant" within the statutory definition because he already had credit and was seeking to continue it, without making an application. The regulation promulgated by the Federal Reserve Board defines an applicant as a person "who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2(e).

   Respondent argues that the regulation is inconsistent with the statute, that the statute does not contemplate that continuation of credit is an application, and that the regulation is not entitled to deference as an authoritative interpretation of the statute. Respondent cites cases supporting its position, *e.g.*, *Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co, LLC* 476 F. 3d 436, 441 (7th Cir. 2007)(dictum relating to whether a guarantor would be an "applicant"); but cases cited by *pro se* Claimant reach the opposite conclusion. *RL BB Acq., LLC v. Bridgemill Commons Dvlpmt. Grp, LLC*, 754 F.3d 380 (6th Cir. 2014); *Estate of Davis v. Wells Fargo Bank*, Case 10-1549 (7th Cir. 2011); *Powell v. Pentagon Federal Credit Union*, No 10CV 785 at 9 (N.D. Ill. 2010) (continuation of credit card). As recently as 2015, the Supreme Court accepted one of these cases and apparently found it difficult, for the result was affirmed by an equally divided Court. *Hawkins v. Community Bank of Raymore*, 761 F. 3d 937 (8th Cir. 2014) *aff'd by an equally divided Court*, 574 U.S. 1190 (2016) (concerning a guarantor as "applicant").[5] Almost all of the

---

[5] The Court of Appeals opinion in *Hawkins* is cited by Respondent (Resp. Br. at 7) without the subsequent history.

cases that reject the regulation deal with the question of the appropriate treatment of a guarantor[6] rather than the continuation of a credit card. Inclusion of a guarantor in the statutory treatment of an "applicant" raises a number of issues, including most notably the secondary nature of the obligation of a guarantor, that are addressed in these cases and part of the rationale for the decisions. These issues related to the status of a guarantor are not presented by the continuation of a credit card. If there is appellate authority on the continuation of a credit card, the parties have not cited it.

With this significant split in authority, *see Hawkins* at 941 & n.4; *Regions Bank v. Legal Outsource PA*, 936 F. 3d 1184, 1197 (11th Cir. 2019), there is no clearly controlling authority. The Northern District of Illinois opinion in *Powell, supra*, even if not directly controlling, is persuasive. I conclude that, at least with respect to the continuation of a credit card, the regulation is entitled to deference, and that Claimant was an "applicant."

b. <u>Did Respondent provide the statement required under ECOA?</u> Respondent argues that all that is necessary to comply with the requirements of ECOA is a "brief[] [statement of] the principal reason for the adverse action." (Resp. Br. at 7). There is a regulation promulgated under ECOA concerning the nature of the statement required. This regulation is not challenged by Respondent and is quoted in the cases cited by Respondent. It specifically provides that, "'Statements that the adverse action was based on the creditor's internal standards or policies or that the applicant failed to achieve the qualifying score on the creditor's credit scoring system are insufficient.' 12 CFR §§ 202.9(a)(2)(i), (b)(2) (1989)." *quoted in Grant v. World Class Mortg. Corp.*, No. 89 C 3824, 1990 WL 19466. Respondent's response alluded only to its internal standards and therefore did not comply with these requirements.

c. <u>Damages and remedies</u>. Respondent finally argues that Claimant has shown no damages from the failure to comply. Claimant has provided no evidence of actual damages and does not argue that he has. Claimant argues that nominal damages are available and that the Respondent met the state of mind required for punitive damages.

In a claim for damages, the statute specifically calls for actual damages, 15 USC 1691e (a), and Claimant has cited no authority in support of nominal damages. I conclude that nominal damages are unavailable.

---

[6] Respondent cites *Tewinkle v. Cap. One, N.A.*, No. 19CV1002V, 2019 WL 8918731 (W.D.N.Y. Dec. 11, 2019), which does deal with a credit card. However, Respondent neglected to note that this is not the final decision, as cited in *Fralish v. Bank of America*, 2021 WL 4453735 at *2 (N.D. Ind.). Errors like this and the citation to the 8th Circuit opinion in *Hawkins, supra*, without noting that it was affirmed by an equally divided Supreme Court, call into question the reliability of the citations.

Claimant cited authority from the Fifth Circuit holding the punitive damages are available "regardless of proof of actual damages, if the creditor's conduct is adjudged wanton, malicious or oppressive, or if it is deemed to have acted in reckless disregard of the applicable law." *Fischl v. General Motors Acceptance Corp.* 708 F. 2d 143, 148 (5th Cir. 1983); *accord, Anderson v. United Finance Co.*, 666 F. 2d 1274 (1982). Section 1691e(b) provides for punitive damages of up to $10,000 and directs:

> In determining the amount of [punitive] damages in any action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

Section 169e(b).

Considering these factors, in the absence of forbidden discrimination the prohibition of which is the animating force behind the statute, I conclude that an award of $1500 in punitive damages is consistent with the directions of Section 1691e(b).

The statute also provides for equitable and injunctive relief, §1691e(c), and the pleadings seek equitable relief (Demand, Item 4, and Paragraphs 100 and 102 (b)(iv) of the Complaint). However, the testimony at the Evidentiary Hearing provided the specific reasons to which Claimant was entitled, so there is no further role for equitable relief here.

Claimant is entitled to a recovery of $1500 on the ECOA claims reflected in Paragraph 94(e) of the Complaint.

4. <u>Bonus</u>. Claimant also seeks the Bonus. (Demand, Item 2). Respondent points to the requirement that the Bank Account be open and in good standing at the time for payment of the Bonus. It is undisputed that the Bank Account was not open and in good standing at that time. However, it is a basic principle of contract law that a party cannot cause the failure of a condition and then rely on that failure as a basis for excusing its performance. By depositing $200,000, leaving it in the Bank Account, and standing ready to maintain the Bank Account until Respondent announced the closure of the Bank Account, Claimant had taken all the actions required of him to earn the Bonus. He therefore became entitled to payment of the Bonus on March 1, 2022, with a payment date no later than 90 days from March 1, 2022, or May 30, 2022.[7] On the breach of contract claim, Claimant is awarded $1500.00 plus prejudgment interest from May 30, 2022 until the date this Award is communicated to the Parties.

---

[7] Counting 90 days would require payment on May 29, 2022, a Sunday.

5. <u>Illinois consumer fraud and human rights claims</u>. Claimant asserts that the conduct of Respondent violates the Illinois Consumer Fraud Act ("CFA") and the Illinois Human Rights Act.

   a. <u>The Credit Card</u>. To the extent that Claimant intends to challenge closing the Credit Card, Claimant must elect a remedy but cannot recover both under the CFA or the Illinois Human Rights Act, on the one hand, and, on the other, the ECOA. 15 USC 1691d(e).[8] Respondent cites cases holding that the assertion of the claim under the ECOA is an election of remedies, whether or not pursued to successful conclusion. Claimant offers no contrary authority. I hold that claims under the CFA with respect to the Credit Card are barred by the election of remedies, and such claims are denied. This section 5(a) disposes of some claims under Paragraphs 94(a), (b) and (e), and all claims under Paragraphs 94 (c), (d), (f).

   b. <u>The Bank Account</u>. The Claimant challenges withholding the Bonus and closure of the Bank Account (without regard to allegations about the Bonus) as unfair (*e.g.*, Claimant complains that Respondent is "investigator…judges…jury [and] …executioner" (TX 328:15-18).

      i. <u>Closing the Bank Account</u>. Claimant has not offered any legal theory on which Respondent is required to offer banking services to consumers or any representation that it will select its counterparties on any particular basis. The contract between Claimant and Respondent expressly allows Respondent (and Claimant) to terminate the arrangement at any time for any reason or no reason. Respondent's exercise of this express right is not unfair. Claimant is not entitled to recover on this CFA claim, reflected in Paragraph 94(a) and (b) of the Complaint.

      ii. <u>Withholding the Bonus</u>. As discussed above, withholding the Bonus was a breach of contract. The interaction between breach of contract cases and the CFA is addressed in several cases cited by the parties. It is true that some breaches of contract based on misrepresentation can be a violation of the CFA. For example, misrepresenting the history of a used car may qualify, as it presents the possibility of consumer harm. *Bankier v. First Federal Sav. & Loan*, 588 N.E. 2d 391, 397 (Ill. App. 1992).

---

[8] Respondent argues that this provision preempts state law, but it actually only requires an election of remedies.

However, those precedents do not fit these facts, and not every breach of contract amounts to an unfair practice giving rise to a claim under the CFA. There is no evidence that Citibank believed at the time of the opening of the Bank Account that it would ultimately close the Bank Account before the payment of the Bonus. Nor is there any evidence that Citibank makes an ongoing practice of soliciting a major deposit to earn a bonus and then closes the account after the bonus is earned but before it is payable. I find no misrepresentation or overall plan to cheat consumers out of bonus amounts. Instead, Respondent's action appears to have been at worst an opportunistic reaction to an unusual set of circumstances: a Bank Account closed for legitimate reasons shortly before the payment of a Bonus that was already earned. As the Illinois Court of Appeals has explained,

> The Act is not applicable to every wrong caused to a consumer. The Act was intended to protect consumers against fraud, unfair or deceptive acts or practices in the conduct of trade or commerce. We do not believe it was intended to apply an isolated misstatement like the one at issue here.

*Skyline International Development v. Citibank, F.S.B.* (302 Ill. App. 3d 79, 85)(1998). It is even less intended to apply in the absence of any misstatement or unfair practice.

Claimant is not entitled to recover under the CFA for the claim reflected in Paragraph 94(d) of the Complaint.

6. <u>Attorneys' fees and costs</u>. Claimant asserts a claim for attorneys' fees in the initial Demand and in Paragraph 102(e) of the Complaint, and Respondent's Amended Response requests an award of fees and costs to Respondent. By agreement of the parties, reflected in Scheduling Order No. 1, all evidence concerning a recovery of fees was to be presented in the Evidentiary Hearing for a simultaneous determination of the merits and any claims for fees. A party seeking fees has the burden of proof on any claim for fees. Neither party presented any evidence with respect to fees. All claims for fees are denied.

## CONCLUSION

On Claimant's ECOA claim, Claimant shall recover $1500.00 plus post-judgment interest at the forum rate of 10% per annum from the date of the communication of this Award to the parties until payment. On Claimant's breach of contract claim, Claimant shall recover $1500.00 plus prejudgment interest from May 30, 2022 until the communication of this Award to the parties, at the forum rate of 10% per annum, plus post-judgment interest at the forum rate of 10% per annum from the date of the communication of this Award to the parties until payment. All other claims asserted by Claimant in the Demand and Complaint are denied.

9

The above sums are to be paid on or before 30 days from the date of this Award.

The administrative fees of the AAA totaling $2,500 and the compensation of the Arbitrator totaling $3,750 shall be borne by Respondent.

This Final Arbitration Award is in full settlement of all claims submitted in this arbitration. All claims not expressly granted herein are denied.

1/4/24
Date

Kathleen Smalley, Arbitrator